## SOO HOO DOO HON v. JOHNSON, Immigration Com'r.

### (District Court D. Massachusetts. June 27, 1922.)

### No. 2189.

1. **Aliens ⊕⇒32(13)—Record held not to show that Chinese applicant for entry was not given fair hearing; effect of perjured testimony.**

   Decision of immigration authorities against the claim of a Chinese applicant for admission that he was the son of a citizen of the United States *held* not so clearly against the evidence as to show unfairness, where some of the testimony in his favor was afterward admitted to have been fabricated and the testimony of his alleged father was directly in conflict with prior statements deliberately made to the authorities.

2. **Aliens ⊕⇒32(9)—Manner of hearing case held not prejudicial to applicant for entry.**

   That the case of an applicant for entry was heard by a board of special inquiry, or that his appeal was primarily considered by a board of review, which made recommendations to the Secretary of Labor, *held* matters of departmental organization and routine which did not authorize interference by the courts in the absence of any showing that the tribunals were unfairly constituted or their employment prejudicial to applicant.

Petition of Soo Hoo Doo Hon against John P. Johnson, Commissioner of Immigration, for writ of habeas corpus. Denied.

Warren O. Kyle, of Boston, Mass., for petitioner.
The United States Attorney, for the United States.

MORTON, District Judge. Habeas corpus to the commissioner of immigration to secure the discharge of the petitioner who is held for deportation. He is a Chinaman and claims admittance to the country as the son of a citizen of the United States. The immigration tribunals decided that the alleged father is a citizen of this country as claimed; but they held that relationship between him and petitioner was not established.

The petitioner's contentions are: (1) That he was not accorded a fair hearing, because the immigration tribunals regarded the evidence erroneously and unfairly, being prejudiced against the petitioner by certain statements of the alleged father; (2) that the board of special inquiry by which his case was decided was not properly or legally constituted; and (3) that he was not accorded a proper right of appeal to the Secretary of Labor.

[1] As to (1) the petitioner's contention is that on the evidence submitted the immigration tribunals were bound to decide that the necessary relationship had been established, and acted arbitrarily and unfairly in refusing to do so. It is only in extreme cases that it can

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

be held that a fact in controversy has been so clearly established by the evidence submitted that a rejection of the evidence and a refusal to find the fact by the tribunal which saw and heard the witnesses was arbitrary and erroneous. In questions which turn on credibility of witnesses, as this one does, the printed record gives a very inadequate reproduction of the testimony; the appearance and manner of the witness, the promptness or hesitation with which an answer follows the question, and other things not shown by the transcript, are often of decisive significance.

The petitioner's story was supported by the testimony of himself, his alleged father, and of several other witnesses, two of whom are said by the immigration authorities to have testified with an appearance of frankness and truthfulness. Their testimony, as it appears in the transcript, is straightforward and apparently truthful. The same comment might be made as to the testimony of another witness for the petitioner, Sluhu Moon Shang, who told with much detail of the delivery of a package from the applicant's father to the applicant while at school in the ancestral hall of his village. The applicant himself also testified to the incident. But upon a subsequent examination before the immigration board the applicant admitted that the whole story was a fabrication. The alleged father testified with much detail as to the facts surrounding the applicant's birth, parentage, and ancestry, stating that the applicant was born in 1896. In 1911 the alleged father was living in this country and desired to return to China. . He applied for preinvestigation of his status, and at that time stated distinctly that he had only one son, who was born in 1905 or 1906 and was his only child. In 1913 he returned to this country, and in connection with his readmission was again asked about his family. He then said he had two sons, naming the one whom he had referred to when leaving two years before, and another begotten and born during his visit to China.

The case is therefore one in which fabricated testimony has been introduced on behalf of the applicant, and in which the alleged father has made statements utterly irreconcilable with his present testimony. The testimony of some of the witnesses for the applicant was not impeached and is strikingly detailed and apparently truthful. I am not called upon to say where the truth lies. The question before me is whether, in declining to find in the applicant's favor on the question of relationship, the immigration tribunal acted arbitrarily and unfairly and without reasonable justification for their decision. Proof that fabricated testimony has been introduced does much more than merely discredit the witness involved; it puts the whole case of the party on whose behalf it was offered under suspicion. In this instance the immigration tribunals were quite within their rights in rejecting the testimony of both the applicant and his alleged father, and it does not seem to me that under the circumstances disclosed they acted arbitrarily and unfairly in refusing to accept the testimony of the other witnesses as establishing the applicant's parentage as claimed by him. It should perhaps be added that the counsel now appearing for the applicant was not in the case when the false testimony was offered.

Counsel for the applicant was not permitted to see the evidence in the case until a decision unfavorable to the applicant had been arrived at. He was permitted to introduce all the evidence which he offered. If the case had been rested on the record as so closed, I should have great doubts whether due process of law had been accorded the applicant. But after the record had been closed and had been inspected by counsel for the applicant, the case was, at his request, reopened more than once, in order to permit him to introduce additional testimony. At the time when the final decision of exclusion was arrived at the record was fully known to the applicant's counsel. Taking the proceedings in the immigration tribunals as a whole, they do not seem to me so fundamentally lacking in the requirements of due process of law and fair hearing as to render them nugatory.

[2] Finally, the applicant contends that he was denied the statutory right of appeal because his case was considered by an extrastatutory board, called the board of review, and the Secretary of Labor acted on its recommendations. This seems to me to be a matter primarily of departmental organization. The Secretary has the right to cause cases coming before him to be investigated and considered by his subordinates, and he had the right to consider their reports in making his decision.

It is also claimed by the petitioner that the boards of special inquiry by which his case was decided were not properly constituted. But this again seems to me a matter of departmental routine. It does not appear that the petitioner's case was treated any differently from other similar cases. It is not charged that the members of the boards were "picked" to decide against him; and it does not appear that the make-up of the boards was in fact prejudicial to the petitioner's rights or brought about the decision against him.

On the whole case, no sufficient reason is shown for interfering with the deportation order of the Secretary. The petition will be dismissed, the writ discharged, and the petitioner remanded to the custody of the immigration officials.

So ordered.